1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   EASTERN DISTRICT OF CALIFORNIA

10

11   KIM CARSON and JIM CARSON,            No.  2:12-cv-00739-MCE-CMK

12              Plaintiffs,

13        v.                               **MEMORANDUM AND ORDER**

14   BANK OF AMERICA, N.A. and DOES
     1-50, inclusive,
15

16              Defendant.

17

18        Through this action, Plaintiffs Kim Carson and Jim Carson ("Plaintiffs") seek

19   redress from Defendant Bank of America, N.A. ("Defendant") and Does 1-50 based on

20   alleged violations of California Business & Professions Code section 17200.  Plaintiffs

21   also seek redress based on breach of the covenant of good faith and fair dealing, fraud

22   or negligent misrepresentation, promissory estoppel, wrongful foreclosure and slander of

23   title.  Presently before the Court is Defendant's Motion to Dismiss Plaintiffs' Second

24   Amended Complaint ("SAC") for failure to state a claim upon which relief may be

25   granted, pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]  Defendant's Motion to

26   Dismiss was filed on August 22, 2012.  (ECF No. 26.)

27   _____

28        [1] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise noted.

1

1   Plaintiffs filed a timely opposition to Defendant's Motion on September 20, 2012.  (ECF

2   No. 29.)  For the reasons set forth below, Defendant's Motion to Dismiss is GRANTED

3   without leave to amend.

4

5                                      **BACKGROUND**[2]

6

7          Plaintiffs own real property located in Susanville, California (the "Property")

8   subject to a mortgage loan.  In 2006, they refinanced their loan for the property with

9   Countrywide Bank, N.A. and that loan was later acquired by, and remains with,

10  Defendant.

11         Between 2006 and 2009, Plaintiffs made full and timely mortgage payments on

12  the Property.  Then, at some unspecified time in 2009 ("probably in August 2009"),

13  Plaintiffs contacted Defendant by telephone about obtaining a loan modification.  At that

14  point, Plaintiffs were told by Defendant's unidentified representative that they would have

15  to stop making their monthly payments before they could qualify for a loan modification.

16  Plaintiffs state that Defendant's representative assured them that there would be no

17  negative consequences for skipping payments as part of a loan modification application

18  and that Defendant would not foreclose on Plaintiff's Property while they were in the

19  modification process.

20         For the next three years, Plaintiffs did not pay their mortgage, but called

21  Defendant about the state of their loan modification application.  When they called

22  Defendant, they were subjected to long hold times and transfers, and when they did

23  speak to Defendant's (unnamed) representatives, they did not receive any definitive

24  answers.  In addition, Plaintiffs contend that Defendant lost their documents, so they had

25  to resubmit their loan application multiple times.

26  ///

27  _____

28         [2] The factual assertions in this section are based on the allegations in Plaintiffs' SAC unless
    otherwise specified.  (ECF No. 25.)

                                            2

1   Plaintiffs assert that at all times between 2009 and the commencement of this action that

2   they were ready, willing and able to make their mortgage payments and that they

3   communicated this to unspecified representatives of Defendant and later to their case

4   managers, Ms. Zambrano, Ms. Smith and Ms. Ramirez.

5         In March 2009, Plaintiffs submitted their first loan modification application.  Over

6   two years later, in May or June 2011, Plaintiffs called Defendant's customer service

7   center to speak with someone about paying their arrears.  Plaintiffs contend that

8   Defendant's unnamed representative told them that their arrears would be added to their

9   regular monthly payment for a period of time after they received their loan modification.

10   The representative also told them to continue missing payments while waiting for

11   repayment information in the mail.  In August 2011, Plaintiffs called the customer service

12   center to follow up on their previous conversation because they never received the

13   promised information in the mail.  Another unnamed representative told Plaintiffs that

14   there was no record of their May or June 2011 conversation.  Again, this anonymous

15   representative told Plaintiffs to apply for a loan modification and not to worry about

16   foreclosure.  Plaintiffs re-applied for a loan modification on August 11, 2011.

17         On August 11, 2011, Defendant's subsidary, ReconTrust, recorded a Notice of

18   Default stating that as of August 11, 2011, Plaintiffs owed $36,715.02 in arrears.  (ECF

19   No. 27-1, Ex. 5).[3]  After August 2011, Plaintiffs contacted Defendant more frequently

20   about the status of their loan modification application and began keeping records of who

21   they spoke with and what the representative said.  By September 6, 2011, Defendant

22   assigned Plaintiffs a case manager, Gloria Zambrano.  Ms. Zambrano is the first

23   representative who Plaintiffs spoke with that Plaintiffs identify by name.  Ms. Zambrano,

24   like the unnamed representatives before her, told Plaintiffs not to worry about their

25   missed payments.

26   _____
     [3] In the Court's previous order dated July 16, 2012, the Court took judicial notice of (1) A Grant Deed and
27   Deed of Trust, both recorded May 26, 2006; (2) The Assignment of Deed of Trust recorded June 6, 2012;
     (3) the Notice of Default and Notice of Trustee's Sale recorded in August and November 2011.  Defendant
28   asked the Court to take judicial notice (ECF No. 27) of the same documents and again Plaintiffs did not
     oppose the motion.  Accordingly, Defendant's Request for Judicial Notice is granted.

1   On October 21, 2011, Plaintiffs' new case manager, La'Porscha Smith, told them not to

2   worry about missing payments.  On November 28, 2011 and in December 2011, another

3   case manager, Corrina Ramirez, told Plaintiffs not to worry about missing payments or

4   reinstating their loan.  On November 17, 2011, ReconTrust recorded a Notice of

5   Trustee's Sale on the Property stating that the Property would be sold on December 13,

6   2011.  (ECF No. 27-1 at Ex. 6).  The sale did not take place on that date and remains

7   pending.

8

9                                          **STANDARD**

10

11          On a motion to dismiss for failure to state a claim under Rule 12(b)(6), all

12   allegations of material fact must be accepted as true and construed in the light most

13   favorable to the non-moving party.  Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38

14   (9th Cir. 1996).  Rule 8(a)(2) "requires only 'a short and plain statement of the claim

15   showing that the pleader is entitled to relief,' in order to 'give the defendant a fair notice

16   of what the . . . claim is and the grounds upon which it rests.'"  Bell Atl. Corp. v.

17   Twombly, 550 U.S. 544, 555 (1997) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

18   A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed

19   factual allegations.  Id.  However, "a plaintiff's obligations to provide the grounds of his

20   entitlement to relief requires more than labels and conclusions, and a formulaic recitation

21   of the elements of a cause of action will not do."  Id.  (internal citations and quotations

22   omitted).  A court is not required to accept as true a "legal conclusion couched as a

23   factual allegation."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly,

24   550 U.S. at 555).  "Factual allegations must be enough to raise a right to relief above the

25   speculative level."  Twombly, 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur R.

26   Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) (stating that the pleading

27   must contain something more than a "statement of facts that merely creates a suspicion

28   [of] a legally cognizable right of action.")).

                                                4

1    Furthermore, "Rule 8(a)(2) . . . requires a 'showing,' rather than a blanket

2    assertion, of entitlement to relief." Twombly, 550 U.S. at 556 n.3 (internal citations and

3    quotations omitted). "Without some factual allegation in the complaint, it is hard to see

4    how a claimant could satisfy the requirements of providing not only 'fair notice' of the

5    nature of the claim, but also 'grounds' on which the claim rests." Id. (citing 5 Charles

6    Alan Wright & Arthur R. Miller, supra, at § 1202). A pleading must contain "only enough

7    facts to state a claim to relief that is plausible on its face." Id. at 570. If the "plaintiffs . . .

8    have not nudged their claims across the line from conceivable to plausible, their

9    complaint must be dismissed." Id. However, "a well-pleaded complaint may proceed

10   even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a

11   recovery is very remote and unlikely.'" Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S.

12   232, 236 (1974)).

13   A court granting a motion to dismiss a complaint must then decide whether to

14   grant leave to amend. Leave to amend should be "freely given" where there is no

15   "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice

16   to the opposing party by virtue of allowance of the amendment, [or] futility of the

17   amendment . . . ." Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v.

18   Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to

19   be considered when deciding whether to grant leave to amend). Not all of these factors

20   merit equal weight. Rather, "the consideration of prejudice to the opposing party . . .

21   carries the greatest weight." Id. (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183,

22   185 (9th Cir. 1987)). Dismissal without leave to amend is proper only if it is clear that

23   "the complaint could not be saved by any amendment." Intri-Plex Techs. v. Crest Group,

24   Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (citing In re Daou Sys., Inc., 411 F.3d 1006,

25   1013 (9th Cir. 2005)); Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir.

26   1989) ("Leave need not be granted where the amendment of the complaint . . .

27   constitutes an exercise in futility . . . .")).

28   ///

1

**ANALYSIS**

2

3      A.      **Rule 8(a) Requirements**

4

5          As stated above, while lenient, Rule 8(a) still requires that a plaintiff's factual

6   allegations must be enough to raise a right to relief above the speculative level.

7   Twombly, 550 U.S. at 555.  Further, when fraud is alleged, as here, a plaintiff must

8   conform to the heightened pleading standards of Rule 9(b).  See, e.g., Kearns v. Ford

9   Motor Co., 567 F.3d 1120, 1124 (9th Cir. 2009) (the heightened pleading requirements

10  of Rule 9(b) require a plaintiff to plead facts as to the "who, what, when, where, and how"

11  of the alleged fraud).

12          Plaintiffs' pleadings regarding the Property fail to adhere to either the heightened

13  pleading standards of Rule 9(b) or the more lenient standard of Rule 8(a).  Essentially,

14  Plaintiffs allege that they quit paying their mortgage "sometime" in 2009 after "someone"

15  representing Defendant told them that non-payment was the first step to "possibly"

16  qualifying for a loan modification.  Plaintiffs cannot name a single person they spoke with

17  between 2009 and September 2011, including the alleged representative who told

18  Plaintiffs that they would not suffer any consequences if they quit paying their mortgage

19  in 2009.  Plaintiffs' initial discussion with Defendant regarding a loan modification was

20  "probably in August 2009."  (ECF No. 25 at 5.)  Plaintiffs' allegations regarding the

21  Property are little more than "an unadorned, the-defendant-unlawfully-harmed-me

22  accusation."  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).  Such minimal

23  allegations are simply insufficient to support any of Plaintiffs' causes of action pertaining

24  to the Property.

25          Accordingly, Defendant's Motion to Dismiss all Plaintiffs' claims relating to the

26  Property is granted.  Although the court dismisses under 8(a), the merits of each claim

27  are discussed below.

28  ///

1
2

**B.      Breach of the Covenant of Good Faith and Fair Dealing**

Plaintiffs' first cause of action alleges that Defendant breached the covenant of good faith and fair dealing.  The implied covenant of good faith and fair dealing rests upon the existence of some specific contractual obligation.  <u>Foley v. Interactive Data Corp.</u>, 7 Cal. 3d 654, 683-84 (1988).  The covenant of good faith is read into contracts to protect the express covenants or promises of the contract.  <u>Id.</u> at 690.  The covenant does not protect some general public policy interest not directly tied to the contract's purpose.  <u>Id.</u> at 690.  "In essence, the covenant is implied as a supplement to the express contractual covenants, to prevent a contracting party from engaging in conduct which frustrates the other party's rights to the benefits of the contract."  <u>Love v. Fire Ins. Exch.</u>, 221 Cal. App. 3d 1136, 1153 (1998).

Under California law, recovery for breach of the covenant "is available only in limited circumstances, generally involving a special relationship between the contracting parties."  <u>Bionghi v. Metro. Water Dist.</u>, 70 Cal. App. 4th 1358, 1370 (1999).  California courts have rejected the argument that the doctrine, which traditionally extends only to unique fiduciary like relationships, should encompass normal commercial banking transactions.  <u>Mitsui Mfrs. Bank v. Sup. Ct.</u>, 212 Cal. App. 3d 726, 729 (1989).  Plaintiffs allege that Defendant breached the covenant of good faith and fair dealing by, among other things, inducing Plaintiffs to stop making payments while delaying the loan modification process until late fees and attorneys' fees grew to an "insurmountable amount."  (ECF No. 25 at 8-9.)  Plaintiffs further argue that Defendant prevented them from performing under the contract by refusing to provide them with the amount required to reinstate their loans.  (<u>Id.</u>)

Regardless of whether these allegations are valid, redress is not available under the good faith doctrine.  Plaintiffs do not allege a "unique fiduciary relationship" between the parties such that application of the doctrine is warranted, and it appears there is not such a relationship.

1   Instead, Defendant's alleged breach arises out of a normal commercial transaction, a

2   mortgage loan, and California courts have declined to extend the doctrine to such

3   transactions.

4        Defendant's Motion to Dismiss Plaintiffs' claim for breach of the covenant of good

5   faith and fair dealing is therefore granted.

6

7        **C.**      **Fraud or Negligent Misrepresentation**

8

9        Plaintiffs' second cause of action is for fraud or negligent misrepresentation.

10  Plaintiffs claim that Defendant made material misrepresentations and omissions, which

11  Defendant knew were false, with the intent to cause Plaintiffs to default so that

12  Defendant could foreclose on Plaintiffs' Property.

13       In California, the required elements of fraud are "a) misrepresentation;

14  b) knowledge of falsity; c) intent to defraud, i.e., to induce reliance; d) justifiable reliance;

15  and e) resulting damage."  In re Estate of Young, 160 Cal. App. 4th 62, 79 (2008)

16  (internal citation omitted).  "The same elements comprise a cause of action for negligent

17  misrepresentation, except there is no requirement of intent to induce reliance."  Cadlo v.

18  Owens-Illinois, Inc., 125 Cal. App. 4th 513, 519 (2004).  In stating a negligent

19  misrepresentation claim, the plaintiff must nonetheless allege that the plaintiff actually

20  relied upon Defendant's purported misrepresentations.  Id.  "Thus, the mere assertion of

21  'reliance' is insufficient.  The plaintiff must allege the specifics of his or her reliance on

22  the misrepresentation to show a bona fide claim of actual reliance."  Id.  A claim for fraud

23  must also meet the heightened pleading standard of Rule 9(b), which requires that the

24  allegations be "specific enough to give defendants notice of the particular misconduct

25  which is alleged to constitute the fraud charged so that they can defend against the

26  charge and not just deny that they have done anything wrong."

27  ///

28  ///

1   Semegen v. Weidner, 780 F.2d 727, 731 (9th Cir. 1985); see also Kearns, 567 F.3d at

2   1124 (the heightened pleading standards of Rule 9(b) require a plaintiff to plead facts as

3   to the "who, what, when, where, and how" of the alleged fraud). Statements of the time,

4   place and nature of the alleged fraudulent activities are sufficient, Semegen,780 F. 2d at

5   735, provided the plaintiff sets forth "what is false or misleading about a statement and

6   why it is false," In re GlenFed, Inc., Sec. Litig., 42 F.3d 1541, 1548 (9th Cir. 1994).

7          Here, that standard has not been met, particularly with regard to Plaintiffs' August

8   2009 conversation with Defendant. (See ECF No. 25 at 5.) Plaintiffs fail to allege the

9   "who, what, when, where, and how" of this critical conversation, among others. Kearns,

10   567 F.3d at 1124. Plaintiffs' SAC also fails to specifically allege what was false or

11   misleading about any of Defendant's statements, and why those statements were false,

12   therefore falling short of the 9(b) pleading standard.

13          Moreover, Plaintiffs fail to allege any facts demonstrating the reasonableness of

14   their reliance on Defendant's alleged oral representations that Plaintiffs should stop

15   paying their loan, would suffer no negative consequences for ceasing to pay their loans,

16   and that their applications would be approved. See Young, 160 Cal. App. 4th at 79.

17   Thus, even if Plaintiffs were to meet the heightened pleading requirements of Rule 9(b),

18   they nonetheless fail to plead facts sufficient to establish a cause of action for fraud or

19   negligent misrepresentation. See id.

20          Defendant's Motion to Dismiss Plaintiffs' claim for fraud or negligent

21   misrepresentation is therefore granted.

22

23          **D.     Promissory Estoppel**

24

25          Plaintiffs' third cause of action is for promissory estoppel. Under California law, a

26   plaintiff bringing an action for promissory estoppel must demonstrate: 1) the existence of

27   a promise "clear and unambiguous in its terms;" 2) "reliance by the party to whom the

28   promise is made;" 3) that any reliance was both "reasonable and foreseeable;" and

1    4) that the party asserting the estoppel was injured by his reliance.  US Ecology, Inc. v.

2    Cal., 129 Cal. App. 4th 887, 901 (2005) (citing Laks v. Coast Fed. Sav. & Loan Ass'n.,

3    60 Cal. App. 3d 885, 890 (1976)).  "The doctrine of promissory estoppel is used to

4    provide a substitute for the consideration which ordinarily is required to create an

5    enforceable promise."  Raedeke v. Gibraltar Sav. & Loan Ass'n, 10 Cal. 3d 665, 672-73

6    (1974).

7         Plaintiffs allege that in March 2009, Defendant "promised" that it would not

8    foreclose on Plaintiffs' Property while they were reviewing their application for a loan

9    modification.  (ECF No. 25 at 14.)  Plaintiffs also argue that they relied on Defendant's

10   repeated advice from June 2011 to January 2012 to "not worry about an impending sale

11   date" because it would be moved if their loan application was still pending.  (Id.)

12   Plaintiffs contend that they reasonably relied upon Defendant's representation, and thus

13   did not attempt to reinstate their loan even though they could pay the arrears in one

14   lump sum and even after receiving both a Notice of Default and Notice of Trustee's Sale

15   (Id. at 4, 6, 8.)

16        Plaintiffs' claim for promissory estoppel is "a cause of action implicitly integrated

17   to the sale" to which California's tender rule applies.  Montoya v. Countrywide Bank,

18   No. C09-00641 JW, 2009 WL 1813973, at *11 (N.D. Cal. June 25, 2009).

19   The gravamen of Plaintiffs' claim is that Defendant promised that it would not foreclose

20   on Plaintiffs' property, and then did so.  Accordingly, Plaintiffs are required to "allege

21   tender of the amount of [the lender's] secured indebtedness in order to maintain any

22   cause of action for irregularity in the sale procedure."  Abdallah v. United Sav. Bank, 43

23   Cal. App. 4th 1101, 1109 (1996).  Plaintiffs have failed to allege they have tendered this

24   amount.   Instead, they simply assert that they were ready, willing, and able to pay back

25   their arrears.  Notably, Plaintiffs do not allege that they were ready, willing and able to

26   pay back the full amount of the debt.

27        Accordingly, Defendant's Motion to Dismiss Plaintiffs' promissory estoppel claim

28   is granted.

1

**E.     Wrongful Foreclosure**

2

3          California Civil Code Sections 2924-2924i govern non-judicial foreclosures.

4    California courts have consistently held that the Civil Code provisions "cover every

5    aspect" of the foreclosure process, <u>I.E. Associates v. Safeco Title Ins. Co.</u>, 39 Cal. 3d

6    281, 285 (1985), and are "intended to be exhaustive," <u>Moeller v. Lien</u>, 25 Cal. App. 4th

7    822, 834 (1994).  Furthermore, a defaulted borrower is "required to allege tender of the

8    amount of [the lender's] secured indebtedness in order to maintain any cause of action

9    for irregularity in the sale procedure."  <u>Abdallah</u>, 43 Cal. App. 4th at 1109.  Therefore, an

10   action to set aside a foreclosure sale, unaccompanied by an offer to tender, does not

11   state a cause of action which a court of equity recognizes.  <u>Karlsen v. Am. Sav. & Loan</u>

12   <u>Ass'n</u>, 15 Cal. App. 3d 112, 117 (1981).

13          Plaintiffs argue that the Notice of Default contained an inaccurate amount of

14   arrears in violation of section 2924.  Plaintiffs further allege that they were "ready and

15   willing to pay their <u>arrears</u> to reinstate their loan," but Defendant refused to accept it.

16   (ECF No. 25 at 15.)  The Court finds this argument irrelevant in light of the fact that

17   Plaintiffs have failed to offer the requisite tender.  Plaintiffs have not accompanied such

18   a claim with an offer of tender and therefore they do not state a claim which the Court

19   recognizes.

20          Accordingly, Defendant's Motion to Dismiss Plaintiffs' wrongful foreclosure claim

21   is granted.

22

23

**F.     Violation of California Business & Professions Code Section 17200**

24

25          Plaintiffs' fifth cause of action asserts that Defendant violated California's Unfair

26   Competition Law, Cal. Bus. & Prof. Code § 17200 et seq.  California's Unfair Competition

27   Law ("UCL") defines unfair competition as "any unlawful, unfair or fraudulent business

28   act or practice."  Cal. Bus. & Prof. Code § 17200.

1    This section establishes a private right of action to remedy such unfair competition.  See

2    Webb v. Smart Document Solutions, LLC, 499 F.3d 1078, 1082 (9th Cir. 2007).

3         Section 17200 establishes three separate varieties of unfair competition: acts or

4    practices which are unlawful, or unfair, or fraudulent.  Cel-Tech Commc'ns., Inc. v. L.A.

5    Cellular Tel. Co., 20 Cal. 4th 163, 180 (1999).  In proscribing "unlawful business

6    practices, section 17200 'borrows' violations of other laws and treats them as unlawful

7    practices that [section 17200] makes independently actionable."  Durrell v. Sharp

8    Healthcare, 108 Cal. App. 4th 1350, 1361 (2010).  Thus, "unlawful" practices are

9    practices "forbidden by law, be it civil or criminal, federal, state, or municipal, statutory,

10   regulation, or court-made."  Saunders v. Sup. Ct., 27 Cal. App. 4th 832, 838-39 (1994)

11   (citing People v. McKale, 25 Cal. 3d 626, 632 (1979)).  To state a cause of action based

12   on an "unlawful" business act or practice under the UCL, a plaintiff must allege facts

13   sufficient to show a violation of some underlying law.  McKale, 25 Cal. 3d at 635.

14        A business act or practice is "unfair" when the conduct "offends an established

15   public policy or when the practice is immoral, unethical, oppressive, unscrupulous, or

16   substantially injurious to consumers."  S. Bay Chevrolet v. Gen. Motors Acceptance

17   Corp., 72 Cal. App. 4th 861, 886-87 (1999).  To sufficiently plead an action based on an

18   "unfair" business act or practice, a plaintiff must allege facts showing the "unfair" nature

19   of the conduct and that the harm caused by the conduct outweighs any benefits that the

20   conduct may have.  Motors, Inc. v. Times Mirror Co., 102 Cal. App. 3d 735, 740 (1980).

21   Such a claim requires a plaintiff to tether its allegation to a constitutional or statutory

22   provision or regulation carrying out such a statutory policy.  See Ferrington v. McAfee,

23   Inc., No. 10-cv-01455-LHK, 2010 WL 3910169, at *11-13 (N.D. Cal. Oct. 5, 2010) (citing

24   Lozano v. AT&T Wireless Servs., 504 F.3d 718 (9th Cir. 2007)) (discussing the use of

25   the tethering test in California courts and the Ninth Circuit).  Furthermore, a plaintiff

26   alleging unfair business practices under section 17200 "must state with reasonable

27   particularity the facts supporting the statutory elements of the violation."  Khoury v.

28   Maly's of Cal., Inc., 14 Cal. App. 4th 612, 619 (1993).

1    A claim for fraudulent business acts under section 17200 is distinct from a

2    common law fraud claim.  Under section 17200, a plaintiff does not need to show

3    reliance in order to state a claim for fraudulent business acts.  <u>Klein v. Earth Elements</u>,

4    59 Cal. App. 4th 965, 970 (1997).  A plaintiff need only allege that the public is likely to

5    be deceived by the alleged business acts.  <u>Id.</u>  However, all claims alleging fraudulent

6    business practices under section 17200 are subject to the heightened pleading standard

7    of Rule 9(b).  <u>See</u> <u>supra</u>.

8    In this case, Plaintiffs allege that Defendant engaged in business practices that

9    were unfair, unlawful, and/or fraudulent.  Specifically, Plaintiffs argue that Defendant's

10   breach of the covenant of good faith and fair dealing, acts of inducing reliance under the

11   doctrine of promissory estoppel, and violations of Civil Code section 2924 are all unfair

12   competition under the UCL.  Plaintiffs' pleadings are insufficient to establish a cause of

13   action for any of the three varieties of unfair competition.  First, Plaintiffs fail to plead

14   facts sufficient to establish that Defendant has violated any law and thus engaged in

15   unlawful business acts.  Although Plaintiffs allege that Defendant violated California Civil

16   Code section 2924, the covenant of good faith and fair dealing, and induced reliance

17   under the doctrine of promissory estoppel, each of these claims fails.  <u>See</u> <u>supra</u>.

18   Accordingly, Plaintiffs' claim for unlawful business practices must also fail.  Second,

19   Plaintiffs have failed to plead facts sufficient to establish a right to relief based on "unfair"

20   business practices.  Although Plaintiffs claim that Defendant has violated several laws or

21   statutory provisions that could carry out a public policy, (ECF No. 25 at 16), Plaintiffs'

22   claims as to those violations fail.  <u>See</u> <u>supra</u>.  Plaintiffs' claim for unfair business

23   practices must also fail.  Finally, Plaintiffs have not met the heightened pleading

24   requirements of Rule 9(b), and thus fail to state a claim for fraudulent business practices.

25   <u>See</u> <u>supra</u>.

26   Plaintiffs have failed thus to state a claim showing that Defendant's business

27   practices were unlawful, unfair, or fraudulent under the UCL.  Defendant's Motion to

28   Dismiss Plaintiffs' UCL claim is therefore granted.

1

### G.    Slander of Title

2

3       For their sixth and final cause of action, Plaintiffs argue that the Notice of Default

4   contained a false statement about the amount of arrears Plaintiffs owed on the Property.

5   (ECF No. 25 at 17.)  Plaintiffs contend that they accumulated arrears because Defendant

6   advised Plaintiffs to stop paying their loan.  (Id.)  Plaintiffs argue that Defendant's

7   inaccurate arrears calculation caused them to lose money because it affected their ability

8   to sell the Property. (Id.)

9       Slander of title requires (1) publication; (2) falsity; (3) absence of privilege;

10  (4) disparagement of another's land which is relied upon by a third party and which

11  results in (5) pecuniary loss.  Gudger v. Manton, 21 Cal. 2d 537, 541 (1943), overruled

12  on another ground in Albertson v. Raboff, 46 Cal. 2d 375, 381 (1956).  Plaintiffs are in

13  default under the Deed of Trust.  (ECF No. 27-1 at Ex. 2.)  As such, the recordation of

14  the Notice of Default and Notice of Sale could not have damaged Plaintiffs even if these

15  documents contained an inaccurate arrears calculation.  Importantly, Plaintiffs fail to

16  allege facts showing that they have suffered damages from slander of title as a matter of

17  law as a result of the recordation of the Notice of Sale.  Accordingly, Defendant's Motion

18  to Dismiss this claim is granted.

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

1

## CONCLUSION

2

3        As a matter of law, and for the reasons set forth above, Defendant's Motion to

4  Dismiss Plaintiffs' Second Amended Complaint (ECF No. 25) is GRANTED without leave

5  to amend.  In addition, the Court sua sponte DISMISSES, without leave to amend,

6  Plaintiffs' claims against all Doe Defendants for failure to state a claim.  The Clerk of the

7  Court is directed to close this case.

8        IT IS SO ORDERED.

9

10 Dated:  December 4, 2012

11                                    _____

12                                    MORRISON C. ENGLAND, JR.
                                      UNITED STATES DISTRICT JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28